STONE, APPELLANT, *v.* STONE, APPELLEE.

(No. 80—Decided February 16, 1983.)

*Messrs. Tracy & Long* and *Mr. Patrick D. Long,* for appellant.

*Ruppert, Bronson, Chicarelli & Associates Co., L.P.A.,* and *Mr. John Smith,* for appellee.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Warren County.

On September 12, 1979, appellant, Beverly K. Stone, and appellee, William A. Stone, Jr., were divorced. Appellant was awarded the custody of Jason W. Stone, the only issue of the marriage.

On April 3, 1981, appellee filed a motion with the Court of Common Pleas of

Warren County, seeking to change the custody of Jason from appellant to appellee. On September 10, 1981, a hearing was held on the motion before Robert S. Olson, a referee for the court of common pleas.

At the hearing, it was established that appellant was living with her paramour, Richard Smith, Melinda and Sammy Harp, appellant's children of a previous marriage, and Tara Smith, daughter of appellant and Smith. Appellant and Smith were both unemployed. Appellant denied that she used marijuana but did admit that Smith had used it in the apartment where they live. It was further established that Smith had been involved in a fight with a neighbor at the apartment complex within the year previous to the hearing. On the other hand, testimony was presented by various witnesses, including the appellee's mother, that appellant was a good mother and that the children, particularly Jason, were clean, well-fed and well-cared for.

As for appellee, testimony was presented by appellant which indicated appellee had failed to pay child support for Jason for a period of time following the divorce and that appellant eventually found it necessary to take appellee to court in order to compel him to make payments. Appellant also testified that Jason rarely saw appellee after the divorce and that appellee did not exercise overnight visitation with any regularity until after he filed for the change of custody. It was further established that appellee worked the third shift at the General Electric plant in Evendale, Ohio, and that he lived in a one-room efficiency apartment. Finally, there was testimony that appellee had at one time used marijuana, but appellant acknowledged that during the two-year period between the divorce and the hearing, she had no indication that appellee was using either drugs or alcohol. Appellant also acknowledged that appellee had been taking Jason to church.

In his behalf, appellee testified that if he was awarded the custody of Jason, he intended to move into his parent's house and switch from the night shift at his job to the day shift. Appellee's mother testified that she would be home during the day to look after Jason if appellee changed work shifts. Finally, appellee testified that he had not used marijuana for a period of two years, and he presented the testimony of other witnesses which indicated that they had not seen appellee use any illicit drugs or consume alcoholic beverages over the previous two years.

On October 16, 1981, the referee filed his report in which he recommended that custody of Jason be given to appellee herein. On December 10, 1981, the trial court, after reviewing the evidence presented to the referee, concurred with the referee's recommendation.

Appellant has timely appealed and sets forth six assignments of error which are as follows:

"FIRST ASSIGNMENT OF ERROR:

"The trial court erred in changing custody of a minor child when no evidence was presented which established that any activity of the Appellant or any aspect of the environment provided for the child by the Appellant had a direct or probable adverse effect on the child.

"SECOND ASSIGNMENT OF ERROR:

"The trial court erred in excluding evidence of the Appellee's violent tendencies and drug use occurring prior to the divorce when such evidence was not before the trial court at the time of the divorce and when such evidence was probative and relevant to the question of custody.

"THIRD ASSIGNMENT OF ERROR:

"The trial court erred in refusing to order a home investigation prior to upholding the Referee's Report when such study would have provided a profes-

sional evaluation of the two home situations upon which to base the decisions.

"FOURTH ASSIGNMENT OF ERROR:

"The trial court erred in refusing to grant a rehearing, or to take further testimony when circumstances had changed since the original hearing and since the Referee's Report and Recommendation was arbitrary, capricious and against the manifest weight of the evidence.

"FIFTH ASSIGNMENT OF ERROR:

"The trial court erred in granting the change of custody when no professional testimony was given to show the harm caused by a change in custody versus the advantages of such a change.

"SIXTH ASSIGNMENT OF ERROR:

"The trial court erred in not appointing a guardian ad litem for Jason Stone, minor child of the parties pursuant to Rule 75(C)(2) of the Ohio Rules of Civil Procedure."

In her first assignment of error, appellant contends that the trial court erred in changing custody when no evidence was presented which established that any of appellant's activities, or the environment which she provided for Jason, had a direct or probable adverse effect upon him.

The custody of children of divorced parents is governed by R.C. 3109.04 which reads, *inter alia,* as follows:

"(B)(1) Except as provided in division (B)(2) of this section, the court shall not modify a prior custody decree unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his custodian, or either joint custodian, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the custodian or both of the joint custodians

designated by the prior decree, unless one of the following applies:

"(a) The custodian or both joint custodians agree to a change in custody.

"(b) The child, with the consent of the custodian or of both joint custodians, has been integrated into the family of the person seeking custody.

"(c) The child's present environment endangers significantly his physical health or his mental, moral, or emotional development and the harm likely to be caused by a change of environment is outweighed by the advantages of the change to the child. * * *"

Therefore, in order to establish cause for transferring the custody of Jason from appellant to appellee, appellee, as the parent seeking the change, must establish: (1) that a change has occurred in the circumstances of Jason or his mother, (2) that the modification is necessary to serve Jason's best interest, and (3) that Jason's present environment significantly endangers "* * * his physical health or his mental, moral, or emotional development and the harm likely to be caused by a change of environment is outweighed by the advantages of the change * * *."

After thoroughly reviewing the record before us, we conclude that there was substantial credible and probative evidence presented at the September 10, 1981 hearing which allowed the trial court to conclude that each one of the above-noted elements had been met.

As to the first element, there was evidence presented that there had been changes in appellant's condition since she was originally awarded custody of Jason. The changes include (1) her moving into an apartment with her paramour, Jason and two children of a previous marriage, and (2) her and her paramour's unemployment, resulting in their depending upon support provided by appellant's mother and grandmother.

As to the second element, there was evidence presented which indicated that

the modification was necessary to serve Jason's best interest. In determining what the best interest of a child is, we must refer to R.C. 3109.04(C) which states:

"(C) In determining the best interest of a child pursuant to this section, whether on an original award of custody or modification of custody, the court shall consider *all relevant factors,* including:

"(1) The wishes of the child's parents regarding his custody;

"(2) The wishes of the child regarding his custody if he is eleven years of age or older;

"(3) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;

"(4) The child's adjustment to his home, school, and community;

"(5) The mental and physical health of all persons involved in the situation." (Emphasis added.)

The factors listed above which seem to most fit Jason's situation include the third, fourth and fifth factors. The trial court, however, was not limited to considering just those factors, but could consider all other relevant factors. Although there was no evidence presented which indicated that Jason's "interaction and interrelationship" with his siblings, his mother, or her paramour was such that would adversely affect Jason, or which indicated that Jason's adjustment to his home and community was anything but satisfactory, or which questioned the mental or physical health of anyone with whom Jason was living, we find that there were other "relevant factors" which, when considered as a whole, indicated that it would be in the best interest of Jason that custody be transferred to his father.

These other factors include (1) the smoking of marijuana by Smith and his friends in the apartment where Jason was staying, sometimes when Jason was home; (2) the fact that Jason and his two half-siblings shared a common bedroom; and (3) the fact that Jason's mother had been living with Smith without marriage and that she gave birth to a child, out of wedlock, which had been fathered by Smith. Taking these factors into consideration, the referee and the trial court found that the best interest of Jason would be served by custody being awarded to appellee.

Appellant argues, however, that the factors relied upon by the referee and the trial court were not "relevant." She contends that the issues of her living with her paramour, his use of marijuana in the apartment where they lived, and her giving birth to his child, all relate to "moral questions," which she argues cannot provide a basis for a change of custody, unless such conduct has a direct or probable adverse impact upon the child. In making this argument, appellant relies upon *Whaley* v. *Whaley* (1978), 61 Ohio App. 2d 111 [15 O.O.3d 136].

We begin our response to this segment of appellant's argument by noting that *Whaley* was decided by the Court of Appeals for Lawrence County; therefore, we are not bound by it.

In *Whaley,* the trial court awarded a change of custody for the reason that the custodial parent was romantically involved with a married man who intended to divorce his wife and marry the custodial parent. The court of appeals reversed, not for the reason that the trial court considered the effect of immoral conduct upon the children in question, but because the trial court based its decision *solely* on the fact that the mother had engaged in the so-called immoral conduct. See, also, *In re Rex* (1981), 3 Ohio App. 3d 198. But, see, *Beamer* v. *Beamer* (1969), 17 Ohio App. 2d 89, 100 [46 O.O.2d 118], in which the court affirmed the decision of the trial court on the basis that "the changed circumstances were sufficient to justify a change of custody for the best interests of the children * * *."

In the case *sub judice,* the referee and

the trial court considered other factors besides issues of extramarital sexual relations. For instance, the referee and the trial court considered the fact that three children shared one bedroom and that appellant's paramour smoked marijuana in the apartment. We do not find either of these factors to be a "moral issue"; in fact, we find the issue of Smith smoking marijuana to be a legal issue. We do not accept appellant's argument that her paramour's admitted use of a controlled substance in contravention of R.C. 3719.01(Q) is simply a "moral question"; such activity raises doubts about the environment to which Jason would be exposed.

Finally, as to the third element of R.C. 3109.04(B), noted *supra*, we find that there was evidence presented which supported the referee's conclusion that Jason's present environment "* * * significantly endangers [his] emotional, moral and mental development," and further, that "* * * the harm in changing custody is outweighed by the advantage of such change." This is the same evidence which suggested that the change of custody would be in Jason's best interest (*i.e.*, Smith's marijuana use and the crowded condition of the apartment).

As a result, we find that appellee presented evidence which met each one of the requisite elements necessary to warrant a change of custody. As such, the trial court's decision was not contrary to the weight of the evidence. Moreover, we must remember that we may not substitute our judgment for that of the trial court. *Trickey* v. *Trickey* (1952), 158 Ohio St. 9 [47 O.O. 481].

Therefore, for the foregoing reasons, appellant's first assignment of error is overruled.

In her second assignment of error, appellant contends that the trial court erred in excluding evidence of appellee's violent tendencies and his previous use of drugs. She relies upon R.C. 3109.04(B)(1), wherein it is stated that a court may modify a prior custody decree "based on facts * * * that were unknown to the court at the time of the prior decree * * *."

At the change of custody hearing, appellant's counsel questioned her concerning physical violence which appellee had exhibited toward her, prior to their divorce, when appellant was pregnant with Jason. Upon objection by counsel for appellee, the trial court excluded appellant's testimony regarding any violence exhibited by appellee prior to the divorce. It is apparent from a reading of R.C. 3109.04(B)(1), that the only way in which testimony is permissible is if appellant has established that such testimony was "unknown to the court at the time of the prior decree." However, neither appellant nor her counsel made such an allegation at trial. In fact, the first record of appellant's attempting to use this testimony is in the brief she filed in this court. In her brief, she argues that since the original custody issue was uncontested by appellee, no evidence relating to his violent behavior was heard prior to the divorce; thus, she concludes, such testimony is admissible as per R.C. 3109.04(B)(1).

Nevertheless, there is nothing in the record before this court, other than the allegation in appellant's brief, which indicates that the original custody issue was uncontested. Absent any further evidence in the record which substantiates the appellant's allegations, we cannot find that the trial court erred in excluding such evidence.

Therefore, appellant's second assignment of error is overruled.

In her third assignment of error, appellant contends that the trial court erred in refusing to order an investigation of the homes of both parties prior to ordering a change of custody. It is appellant's basic contention that a trial court is under a duty to order a home study when requested by either parent and when such a

study would be probative and relevant. We disagree.

R.C. 3109.04(A) states, *inter alia,* that:

"Prior to trial, the court *may cause* an investigation to be made as to the character, family relations, past conduct, earning ability, and financial worth of the parties to the action and may order the parties and their minor children to submit to medical, psychological, and psychiatric examinations." (Emphasis added.)

Clearly, such language is advisory and not mandatory in nature. The trial court is not under a *duty* to do that which it is *not required* to do; thus, the decision to order an investigation is clearly within the sound discretion of the trial court. There being nothing in the record to suggest that the failure to order the investigation was an abuse of discretion, we cannot find that the court erred.

Therefore, the appellant's third assignment of error is overruled.

In her fourth assignment of error, appellant contends that the trial court erred in refusing to allow additional evidence to be presented on the basis of changed circumstances which occurred between the time the referee issued his report and the the time that the court filed its decision. Appellant argues that a trial court must grant a new hearing in such a situation. We disagree.

Appellant argues that due to changed circumstances, *i.e.,* that she and her paramour had become husband and wife, the trial court should have granted a hearing after the report of the referee was issued and prior to the time that the court approved the recommendations of the referee.

Certainly, such a hearing is not required. It is clearly within the court's discretion to allow or deny such a hearing. Appellant, however, believes the trial court did, in fact, abuse its discretion because the changed circumstances (appellant's marriage) eliminated one of the

causes relied upon by the referee when he recommended that custody be changed.

We find, as previously noted in our response to appellant's first assignment of error, that there were factors other than appellant's relationship with Smith which influenced the referee's recommendation and the court's decision to change custody (*e.g.,* the illicit drug activity by Smith and the crowded living conditions). Thus, the trial court did not err in refusing to grant a rehearing.

Therefore, appellant's fourth assignment of error is overruled.

In her fifth assignment of error, appellant argues that the trial court erred in granting the change of custody because professional testimony was not presented on the issue of the harm versus the advantages of a change in custody. Appellant contends that a trial court is required to have professional testimony presented on this point. We disagree.

After a thorough review of R.C. 3109.04, we can find no language which *requires* that professional testimony be presented on the issue of the relative harm and advantages likely to be caused by a change in custody. In the absence of any statutory requirement for such testimony, the trial court is free to consider the facts which it deems to be relevant and to make those findings which in its sound discretion appear to be reasonable and in the best interest of the child.

Therefore, appellant's fifth assignment of error is overruled.

In her final assignment of error, appellant claims that the trial court erred in not appointing a guardian *ad litem* for Jason pursuant to Civ. R. 75(B)(2). She argues that because the court did not appoint a guardian *ad litem,* Jason's interests were not fully protected. Thus, she concludes, any decision rendered by the trial court should not be binding. Again, we disagree.

Civ. R. 75(B)(2) reads as follows:

"When it is essential to protect the in-

terests of a child, the court *may join* the child of the parties as a party defendant and appoint a guardian ad litem, and legal counsel if necessary, for such child * * *." (Emphasis added.)

The words "may join" are not mandatory and the trial court is *not required* to appoint a guardian *ad litem*. It is instead a matter for the court's discretion. Obviously the trial court concluded that there was no need for such representation or protection for Jason and appellant has failed to show that this finding constitutes an abuse of discretion.

Therefore, the appellant's final assignment of error is overruled

It is the order of this court that the judgment appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

HENDRICKSON, P.J., KOEHLER and JONES, JJ., concur.