TRUMP, Appellant,

v.

TRUMP, Appellee.

[Cite as *Trump v. Trump* (1999), 136 Ohio App.3d 123.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 19424.

Decided Nov. 17, 1999.

124

*Edward M. Schneider,* for appellant.

*William J. Detweiler,* for appellee.

WHITMORE, Judge.

Appellant, Gloria Trump, has appealed from a judgment of the Summit County Common Pleas Court, Domestic Relations Division, denying her request for child support from the date of physical separation. This court affirms.

I

On October 27, 1990, Gloria and James Trump were married. On February 6, 1997, a daughter was born to the couple. A little over a month later, on March 20, 1997, due to marital problems, Mrs. Trump left the marital residence and took the child with her.

At the time of the separation, both Mrs. Trump and Mr. Trump planned to terminate their marriage by dissolution. Given their intent, no documents were filed with the court of common pleas. For five months, the couple struggled to reach an amenable separation agreement and shared parenting plan. During that time, Mr. Trump voluntarily paid approximately $1,200 to Mrs. Trump as support for the child.

Being unable to settle their differences out of court, on August 26, 1997, Mrs. Trump filed for divorce. Effective September 26, 1997, the lower court ordered Mr. Trump to pay temporary child support in the amount of $669.41 per month plus poundage.

During a pretrial conference, Mrs. Trump requested the court to order Mr. Trump to pay child support for the six-month period between the physical separation and the effective date of the temporary child support order. The trial court asked the parties to brief the issue.

On December 9, 1998, the trial court issued its final judgment, denying the request for child support for the six-month period in question. Mrs. Trump's timely appeal followed.

II

In her sole assignment of error, Mrs. Trump has claimed:

"The trial court abused its discretion by failing to award child support for the period from the date of physical separation of the parents."

Mrs. Trump has argued that the trial court incorrectly denied her request for child support for the period of time between her leaving the marital residence and her filing for divorce. Following the Ohio Supreme Court's precedent interpreting R.C. 3109.05, the trial court held that the residential parent is entitled to support only from the date of filing for such support. Mrs. Trump has asserted that R.C. 3103.03 should govern instead. This court disagrees.

It is well established that all parents have a duty to support their children. *Haskins v. Bronzetti* (1992), 64 Ohio St.3d 202, 203, 594 N.E.2d 582, 583–584. At common law, such an obligation rested primarily upon the father. *Id.* More than a century ago, in what has become something of a "seminal" opinion, the Ohio Supreme Court observed:

"The duty of the father to provide reasonably for the maintenance of his minor children, if he be of ability, is a principle of natural law. And he is under obligation to support them, not only by the laws of nature, but by the laws of the land. As said by Chancellor Kent, 'The wants and weaknesses of children render it necessary that some person maintains them, and the voice of nature has pointed out the parent as the most fit and proper person.'" *Pretzinger v. Pretzinger* (1887), 45 Ohio St. 452, 458, 15 N.E. 471, 473, overruled on other grounds *Meyer v. Meyer* (1985), 17 Ohio St.3d 222, 17 OBR 455, 478 N.E.2d 806.

Today, the common-law duty imposed on fathers to support their minor children has been codified and placed on both parents. *Haskins*, 64 Ohio St.3d at 204, 594 N.E.2d at 584–585. For example, R.C. 3103.03 places a statutory burden on the mother and father, regardless of their marital status, to support their minor children. *In re Dissolution of Marriage of Lazor* (1991), 59 Ohio St.3d 201, 202, 572 N.E.2d 66, 68–69. R.C. 3103.03(A) states, "The biological or adoptive parent of a minor child must support the parent's minor children out of the parent's property or by the parent's labor."

If the parents of the child are husband and wife, these duties remain unchanged. Nevertheless, once the marriage is over, either through divorce or dissolution, the parents' obligations become subject to court order. *Meyer*, 17 Ohio St.3d at 224, 17 OBR at 457, 478 N.E.2d at 808 (holding that R.C. 3109.05 supercedes R.C. 3103.03 upon divorce or dissolution). In the absence of a court order specifically addressing child support, the custodial parent is required to support the child. *Id.*

As a result, both common and statutory law in Ohio mandate that biological parents, absent a court order to the contrary, provide sufficient support for his or her child. *Dept. of Human Serv. v. Bond* (1993), 92 Ohio App.3d 324, 326, 635 N.E.2d 58, 59–60; see, also, *Aharoni v. Michael* (1991), 74 Ohio App.3d 260, 263, 598 N.E.2d 1215, 1217–1218. However, the law is relatively unexplored as to the obligations of a parent-spouse when he or she moves out of the marital home and no complaint for divorce or request for dissolution is filed.

The sole issue presented by Mrs. Trump's appeal is whether, after physical separation of husband and wife, the nonresidential parent can be ordered in a subsequent divorce proceeding to pay child support from the date of physical separation. This court holds that such retroactive orders ancillary to a divorce proceeding are invalid.

Under R.C. 3105.011, the court of common pleas, including the domestic relations division, "has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters." The domestic relations court's

jurisdiction includes the determination and subsequent modification of child support. *In re Guardianship of Derakhshan* (1996), 110 Ohio App.3d 190, 193, 673 N.E.2d 954, 955–956; R.C. 3109.05. The Ohio Supreme Court has held that a divorce decree providing for the custody and support of minors during minority "continues the jurisdiction of the court for such period without any express reservation in the decree itself." *Corbett v. Corbett* (1930), 123 Ohio St. 76, 174 N.E. 10, paragraph one of the syllabus. However, the court's jurisdiction does not operate retroactively. In *Crittendon v. Crittendon* (1992), 82 Ohio App.3d 484, 488, 612 N.E.2d 759, 762, this Court found fundamental the notion that an order under the child support statute, R.C. 3109.05, is prospective in nature only.

■ In 1985, the Ohio Supreme Court held that a custodial parent is not entitled to retroactive child support where no support order was made or requested. *Meyer*, 17 Ohio St.3d 222, 17 OBR 455, 478 N.E.2d 806 at syllabus. In *Meyer*, the residential mother did not formally request child support at the time she gained custody. The court held that to order reimbursement for past support expenses under such circumstances would be manifestly unfair to the noncustodial parent. *Id.* at 223, 17 OBR at 456–457, 478 N.E.2d at 807–808. To hold otherwise would not have allowed the supporting spouse ample notice to prepare his finances. *Id.* at 224, 17 OBR at 457, 478 N.E.2d at 808. Thus, while existing support orders may be modified retroactively, *State ex rel. Draiss v. Draiss* (1990), 70 Ohio App.3d 418, 421, 591 N.E.2d 354, 356, this Court concurs with the *Meyer* court's reasoning and likewise concludes today that an order *establishing* retroactive child support obligations ancillary to a divorce proceeding is invalid. *Meyer*, 17 Ohio St.3d at 224, 17 OBR at 457, 478 N.E.2d at 808.

In the instant case, Mrs. Trump left the marital residence taking the child with her. At that instant and until she filed for divorce, Mrs. Trump remained under a continuing duty to support her daughter. See R.C. 3103.03. Likewise, Mr. Trump was under a continuing duty to support their child. See *id.* However, five months later, when Mrs. Trump filed the present action in the domestic relations division of the court of common pleas, Mr. Trump's obligation ceased. See *Meyer*, 17 Ohio St.3d at 224, 17 OBR at 457, 478 N.E.2d at 808. It was not until the trial court issued its temporary support order that he once again came under a duty to provide for the child. See *id.*

In this court's view, the filing of Mrs. Trump's complaint simply ended Mr. Trump's first child support obligation as found in R.C. 3103.03. It did not, however, empower the domestic relations division to rule on his responsibilities prior to this action's commencement.[1] Such a pronouncement would be a

---

1. As discussed, *infra* in note 2, the proper venue for such a claim is the juvenile court.

retrospective award of child support ancillary to a divorce proceeding, and, therefore, would be void.

 Finally, this court notes that such a result does not leave a residential parent without recourse. First, support for the time period between filing of the request and the award of child support may be awarded retroactively. *Draiss*, 70 Ohio App.3d at 421, 591 N.E.2d at 356. Second, Mrs. Trump had available to her the juvenile court system which would allow her to collect the child support due for the period between the date of physical separation and the filing of her complaint. Even after filing for divorce, Mrs. Trump's right to pursue financial contribution from Mr. Trump through this avenue remained. See R.C. 2151.23, 2151.231, 3103.03, 3109.03, and, 3109.05.[2] Therefore, this court finds the trial court properly denied Mrs. Trump's request for retroactive child support from the date of physical separation. Mrs. Trump's assignment of error is without merit.

### III

Mrs. Trump's sole assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

CARR, J., concurs.

SLABY, P.J., concurs in judgment only.

---

2. Mrs. Trump's request is for support prior to the opening of divorce proceedings. While R.C. 3109.05 clearly controls the determination of child support decrees in (1) divorce proceedings, and (2) juvenile court child support actions, this court believes that R.C. 3103.03 still delineates a parent-spouse's duty to support his or her minor child before the institution of divorce proceedings. *Spurlock v. Spurlock* (Dec. 15, 1995), Ashtabula App. No. 94-A-0026, unreported, 1995 WL 869966. Thus, a parent-spouse cannot escape his or her parental obligations from the time of physical separation to the commencement of formal divorce proceedings. However, in light of Ohio Supreme Court precedent and this court's decision today, the domestic relations division cannot levy a retroactive award for such time. The proper remedy is to be found with the juvenile court.