OPINION JUDGMENT ENTRY
{¶ 1} Defendant-appellant Deirdre I. Weaver appeals from the October 3, 2003, Judgment Decree of Divorce entered by the Licking County Court of Common Pleas, Domestic Relations Division. Plaintiff-appellee is Charles V. Weaver, Jr.
Statement of the facts and case
 {¶ 2} This matter was initiated by the filing of a complaint for divorce by the plaintiff-appellee Charles V. Weaver, Jr. [hereinafter appellee] on July 20, 2000. A contested divorce hearing was held before a Magistrate on November 6, 7, and 8, as well as December 19, 2001. The following facts arose from that hearing.
 {¶ 3} The parties were married on June 6, 1987, and have two minor children of the marriage, to-wit: Michelle (d.o.b, 9/7/89) and Charles, III (d.o.b. 3/3/91). At the time of the proceeding, appellant had custody of another child from a previous relationship and appellee was the non-residential parent of a child from a previous relationship. After the parties' separation on or about February 8, 2000, appellant became pregnant and gave birth to a child on or about July 24, 2001.[1]
 {¶ 4} Appellee owned real estate prior to the parties' marriage. That real estate was located on Chestnut Hills Road in Licking County, Ohio. During the parties' marriage, this real estate was used as collateral to purchase a building lot on 0'Possum Hollow Road, Licking County, Ohio. In 1992, the Chestnut Hills Road property was sold for $59,900.00. From the net proceeds of the sale, appellee purchased materials for the construction of the residence on O'Possum Hollow Road which was competed in 1996. At the time of the proceeding, the parties lived in the O'Possum Hollow Road residence. During the marriage, the parties also purchased rental property located on Park Avenue in Newark, Ohio.
 {¶ 5} Prior to initiating this divorce proceeding, appellee became suspicious of appellant's conduct with the children in the home. In response, appellee installed a video camera in the home. The video camera recorded appellant's behavior with the parties' two children, appellant's other minor child, four foster children and occasionally, appellee's child from another relationship. Upon reviewing the tape, law enforcement officials were advised of possible child endangerment. On February 8, 2000, appellant was arrested on nine counts of child endangerment and removed from the marital residence.
 {¶ 6} Appellant was subsequently convicted of all nine counts in the Licking County Common Pleas Court. Upon appeal, the Licking County Court of Appeals affirmed eight of the convictions. As part of her sentence, appellant was ordered to have no contact with any child absent written permission from appellant's Probation Officer.
 {¶ 7} Evidence was introduced at trial which indicated that the minor children were suffering from post-traumatic stress disorder. At the time of the final hearing, the children remained in counseling. The childrens' counselor felt continued counseling was necessary.
 {¶ 8} Upon completion of the hearings, the Magistrate issued a Magistrate's Decision. Both parties filed timely objections to the Magistrate's Decision. Those objections were resolved in the trial court's Opinion filed August 1, 2003. A Judgment Decree of Divorce was filed on October 3, 2003. Appellant filed a timely notice of appeal. In light of the filing of the notice of appeal, appellee filed a motion to stay in the trial court on December 22, 2003. The stay was granted.
 {¶ 9} Accordingly, it is from the October 3, 2003, Judgment Decree of Divorce that appellant appeals, raising the following assignments of error:
 {¶ 10} "I. The trial court erred in failing to make an equitable division of the property of the parties pursuant to revised code 3105.171 and that such failure constitutes an abuse of discretion.
 {¶ 11} "II. Appellant submits that the court erred in awarding appellee a judgment in the sum of $2,651.88 as and for child support relative to his step-daughter and that such finding was an abuse of discretion.
 {¶ 12} "III. Appellant submits that the trial court erred in overruling her request that the appellee and the minor children be required to submit to a psychological evaluation and that such is an abuse of discretion.
 {¶ 13} "IV. The trial court erred in failing to allow the testimony of warren schneider and which decision is an abuse of discretion.
 {¶ 14} "V. The trial court failed to grant to appellant any form of companionship with her minor children which failure is an abuse of discretion.
 {¶ 15} "VI. Appellant submits that the trial court erred in granting an award of attorney fees against her in the total sum of $5,500.00 and that such was an abuse of discretion."
 I {¶ 16} In the first assignment of error, appellant contends that the trial court erred when it failed to make an equitable division of marital property, pursuant to R.C. 3105.171 and that the failure constituted an abuse of discretion. We agree, in part.
 {¶ 17} A review of a trial court's division of marital property is governed by the abuse of discretion standard. Martinv. Martin (1985), 18 Ohio St.3d 292, 480 N.E.2d 1112. This Court cannot substitute its judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. See Middendorf v.Middendorf, 82 Ohio St.3d 397, 1998-Ohio-403, 696 N.E.2d 575. In order to find an abuse of discretion, this Court must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 18} R.C. 3105.171(C) mandates an equal division of marital property unless that would be inequitable under the circumstances. In dividing marital assets, a trial court must consider all relevant factors, including those listed in R.C.3105.171(F).
 A {¶ 19} First, appellant argues that the trial court erred in regard to the 1997 Chevrolet Lumina. The trial court valued the vehicle at $5,000.00. Appellant contends that the trial court's valuation of the Lumina was a "guesstimate" because there was no evidence as to the vehicle's value. The Magistrate's findings, as adopted by the trial court, indicated that the evidence showed that the vehicle had a loan balance of between $4,500.00 and $5,000.00.
 {¶ 20} Appellant concedes that there was no evidence presented on this issue. Some courts have found that when a party fails to present evidence as to the value of an item, it is akin to an invited error and that party has waived the right to appeal in regard to that asset. See Hruby v. Hruby (June 11, 1997), Columbiana App. No. 93-C-9 (quoting Walls v. Walls (May 4, 1995), Highland App. No. 94-CA-849).
 {¶ 21} However, we conclude that even if error occurred, any such error was not an abuse of discretion. While there was no evidence provided as to the actual value of the Lumina, there was evidence concerning the loan balance due on the vehicle. While this was not necessarily true of the Lumina's value, under these circumstances, we find no abuse of discretion.
 B {¶ 22} Next, appellant contends that the trial court erred when it determined that a portion of the real estate was the non-marital, separate property of appellee. Appellant asserts that while the trial court acknowledged that appellee had failed to produce evidence on this issue, it proceeded to determine that half of the net proceeds from the sale of the Chestnut Hills property was non-marital, or $16,485.00.
 {¶ 23} Characterization of property as separate or marital property is a mixed question of law and fact which must be supported by sufficient, credible evidence. See Kelly v. Kelly,111 Ohio App.3d 641, 676 N.E.2d 1210. The party seeking to establish an asset as separate property must present evidence to trace the asset and show by a preponderance of the evidence that the asset is separate property.[2] R.C. 3105.171; Zeefe v.Zeefe (1998), 125 Ohio App.3d 600, 709 N.E.2d 208.
 {¶ 24} Appellee responds that he owned real property on Chestnut Hills Road, Licking County, Ohio, prior to his marriage to appellant. Subsequent to his marriage to appellant, appellee used this property as collateral to purchase a building lot on O'Possum Hollow Road, Licking County, Ohio. The Chestnut Hills Road property was sold in July, 1992. From the proceeds, the mortgages on Chestnut Hills and O'Possum Hollow Road were paid. The balance of the proceeds were used in the construction of the residence on O'Possum Hollow Road. Thus, appellee asserts that it is clear that the Chestnut Hills property was appellee's separate property and that some of the separate property funds from the sale of that property were put into the O'Possum Hollow Road property.
 {¶ 25} However, appellee acknowledges that the trial court stated that it was unable to allocate the exact percentages of separate property funds so that it could be traced into the marital property. Appellee sees no error or abuse of discretion in how the trial court characterized the property because the trial court's decision was equitable. Appellee submits that because the trial court could trace separate property into the O'Possum Road property, it would not be equitable to divide the property equally between appellant and appellee.
 {¶ 26} The trial court recognized that appellee "failed to present proof of what portion of the Chestnut Hills could be attributed to his premarital funds. . . ." The trial court then proceeded to attempt to reach an equitable conclusion and decided that one-half of the net proceeds were pre-marital and one-half marital. Thus, the trial court divided the net proceeds of $32,970.00 in half, designating $16,485.00 as appellee's separate property.
 {¶ 27} While we agree with the trial court that it is clear that some portion of the Chestnut Hills property was appellee's separate property, appellee bears the burden of proof to trace the assets to separate property. Because appellee failed to meet this burden, as even recognized by the trial court, the trial court erred when it designated a portion of the net proceeds from the sale of the Chestnut Hills property as separate property. Thus, the decision to characterize the property as separate property was not supported by sufficient, credible evidence. The trial court should have characterized the property ($132,970.00) as marital property in total.
 C {¶ 28} Further, appellant argues that proceeds from a second mortgage, for $15,000.00, taken during the marriage, were used by appellee for appellee's own purposes. Appellant asserts that the second mortgage was ostensibly taken out for the purpose of re-siding the exterior of their home and to make improvements to the rental property owned by the parties. However, appellant asserts that none of the money was used for these purposes, but was instead drawn upon by appellee. Appellant contends that the proceeds from that mortgage which were used by appellee for his own purpose should be set-off against appellee's equity in the properties.
 {¶ 29} The mortgage in question was an open end mortgage taken out on November 8, 1999. It was signed by both appellant and appellee. At the final hearing, appellee was asked to explain how the money was used. Appellee acknowledged that one of the reasons the loan was taken was to put siding on the rental property which was never accomplished. Transcript of Proceedings at 377. However, appellee also stated the loan was intended to be used "to fix the basement inside." Id. Appellee went on to testify that the money obtained from the loan was used for "[e]veryday bills. Just things that came up. It was all spent on residence [sic]." Id.
 {¶ 30} Although appellee's testimony is not very specific as to how the money was spent, we find no abuse of discretion in the trial court's failure to set-off these funds from appellee's equity in the properties.
 D {¶ 31} Next, appellant submits that the trial court failed to allocate the credit card debt in an equitable fashion. In particular, appellant contends that the trial court should not have assigned a Choice Visa bill to her simply because it was not sent to the marital home. Appellant concludes that the trial court should have made an allocation of the bills created during the marriage because there was no evidence that they were exclusively attributable to just appellant. Further, appellant contends that the trial court erred when it retained jurisdiction over the allocation of debts. While this court will address each issue in turn, we will first set forth the challenged portions of the trial court's decision.
 {¶ 32} The trial court had previously addressed this issue in detail when it addressed objections raised by appellant.[3]
In so doing, the trial court stated as follows:
 {¶ 33} "The defendant's next objection concerns the allocation of debt, particularly the credit card debt. The Court finds this issue troublesome. The [appellee] testified that he was aware that the [appellant] may have had some credit cards. The [appellant] testified as to the existence of various credit cards in her name which she indicated were used for various necessities. The aggregate amount she testified was $24,844.09. There is no evidence how much of this amount occurred before [appellant] was removed from the home. The case file reflects her initial affidavit listed the aggregate debt at $20,996.84. Additionally, [appellant's] Exhibit L reflects one check made out by the [appellant] from the joint checking account to one of the credit card issuers (i.e. Private Issue).
 {¶ 34} "While the Court is aware of [appellant's] criminal conduct, it again cannot find anything in the testimony to reflect financial misconduct on the part of the defendant before her arrest date (i.e. February 9, 2000).
 {¶ 35} "The Court finds the evidence supports the findings that the Providian, Capital One and Discover Card debts are partly marital. The Court further determines that the [appellee] should be responsible for one-half the balances of the marital portion of these debts and determines at this time the [appellee] to be responsible for specifically for [sic] the following amounts: Providian $6333.81; Capital One $1773.09; and Discover Private Issue $2,082.18. (These are one-half the totals from defendant's initial affidavit.)
 {¶ 36} "Since the [appellant] testified the Choice Visa was not sent to her home address, the Court assigns the entire debt to her.
. . .
 {¶ 37} "However, the plaintiff will not have to be responsible for a portion of these debts or pay defendant anything if the defendant absolves herself of liability via a bankruptcy action.
 {¶ 38} "Further the Court specifically intends that the plaintiff be responsible for only one-half the initial portion of these debts as of February 9, 2000. Therefore the Court will retain jurisdiction if the plaintiff can establish that the specific amounts did not exist as of February 9, 2000, or that a record of the purchases or cash advances reflect uses solely by the defendant. The Court deems that any large cash advances of $500.00 or more are deemed to be used solely for defendant's personal use."
 {¶ 39} We will first address appellant's contention that the trial court erred when it retained jurisdiction over the allocation of debts. In response to appellant's contention, appellee responds that the since the parties had been separated for a considerable period of time, the trial court merely set forth a mechanism whereby appellee could establish that the debts in question were not marital in nature. Appellee argues that the trial court did not reserve the right to change its mind later; it merely provided a mechanism whereby appellee could obtain relief.
 {¶ 40} A trial court may not reserve the right to modify a previous property division. R.C. 3105.171(I);[4] Schiavonev. Schiavone (1998), 126 Ohio App.3d 780, 711 N.E.2d 694;Gordon v. Gordon (2001), 144 Ohio App.3d 21, 759 N.E.2d 431. That is what the trial court has done here. The trial court recognized that there was no evidence as to how much of the credit card debt was incurred before appellant was removed from the home. We do not agree with appellee that such a lack of evidence in the final hearing justifies the retention of jurisdiction to decide such issues after the issuance of a final decree. This is the type of issue that could have been resolved at the time of the final hearing. Evidence on this issue could have been sought through discovery and introduced at trial. Accordingly, we find that the trial court erred when it retained jurisdiction to determine whether debts were actual marital debts when the debts were known of at the time of trial and assigned as marital debt in the final decree.
 {¶ 41} As to the actual distribution of debts, we find that the trial court did not abuse its discretion. Although this Court may not have divided the debts as the trial court did, we cannot say that the division was an abuse of discretion.
 E {¶ 42} Last, appellant asserts that the trial court erred when it provided that appellant's equity in the real property be withheld for six years with interest accruing at 6 percent rather than the statutory interest rate of 10 percent. Appellant submits that she should be awarded statutory interest of 10 percent, or in the alternative, that the trial court should have provided for refinancing or a sale of the marital residence to accommodate paying appellant's marital interest to her.
 {¶ 43} Appellant raised this issue in her Objections to the Magistrate's Decision. In addressing that objection, the trial court "reject[ed] statutory interest at 10 percent in view of the existing economic times." Judgment Entry filed Aug. 1, 2003.
 {¶ 44} There is no requirement that a trial court award interest on the payment of a property division over time. That is left to the discretion of the trial court. See, e.g. Koegel v.Koegel (1982), 69 Ohio St.2d 355, 357, 432 N.E.2d 206; Zeefe v.Zeefe (1998), 125 Ohio App.3d 600, 709 N.E.2d 208.
 {¶ 45} We find no abuse of discretion. The trial court was not required to apply the statutory interest rate of 10 percent and we find no abuse of discretion in awarding interest at 6 percent.
 {¶ 46} In conclusion, appellant's assignment of error is overruled, in part, and sustained, in part.
 II {¶ 47} In the second assignment of error, appellant contends that the trial court erred when it awarded appellee $2,651.88 as and for child support relative to his step-daughter and that such a finding was an abuse of discretion. We agree.
 {¶ 48} The trial court made the following order:
 {¶ 49} "The Plaintiff is granted a judgment against the Defendant in the amount of $2,651.88, which represents child support received by the Defendant for a child who remained in the physical care of the Plaintiff. This minor child was not biologically related to the Plaintiff."
 {¶ 50} Appellant had a court order to receive child support. That court order was valid and enforceable. That order was not modified in any way. Thus, appellant was legally entitled to receive those payments.
 {¶ 51} Further, an award of child support by a domestic relations court cannot be retroactive beyond the date that a motion or order is made. Meyer v. Meyer (1985),17 Ohio St.3d 222, 478 N.E.2d 806; Trump v. Trump (1999),136 Ohio App.3d 123, 736 N.E.2d 39. That is what the trial court did in this case. Appellee made no timely motion for such support and the order made by the trial court ordered the payment of retroactive child support. While the trial court may have had good intentions, we find that the trial court erred when it awarded appellee $2,651.88 as child support relative to his step-daughter.
 {¶ 52} Appellant's second assignment of error is sustained.
 III {¶ 53} In the third assignment of error, appellant argues that the trial court erred and abused its discretion when it denied appellant's request that appellee and the minor children to be ordered to submit to psychological evaluations. We disagree.
 {¶ 54} Revised Code 3109.04 concerns psychological evaluations and the allocation of parental rights and responsibilities. It states as follows, in pertinent part:
 {¶ 55} "Prior to trial, the court may . . . order the parents and their minor children to submit to medical, psychological, and psychiatric examinations. R.C. 3109.04(C). This court's standard of review is abuse of discretion. See e.g. Stone v. Stone
(1983), 9 Ohio App.3d 6, 457 N.E.2d 919; Heyob v. Newman,
Highland App. No. 638, 1987 WL 26726. To constitute an abuse of discretion, the trial court's decision must be unreasonable, arbitrary or unconscionable. Blakemore, supra.
 {¶ 56} We find that the trial court did not abuse its discretion when it denied appellant's motion. Appellant waited until after the third day of the final divorce hearing to file a request for psychological evaluations.[5] Appellant had been convicted of eight counts of child endangering. Evidence showed that the children were already in counseling. Further, the trial court had ample opportunity to see and hear the parties. See Heyob, supra. Under these circumstances, this court finds no abuse of discretion.
 {¶ 57} Appellant's third assignment of error is overruled.
 IV {¶ 58} In the fourth assignment of error, appellant contends that the trial court erred and abused its discretion when it refused to allow the testimony of Warren Schneider. We disagree.
 {¶ 59} Appellant attempted to call Warren Schneider as a witness. Mr. Schneider is a mental health counselor/social worker. Appellee was Mr. Schneider's client. Mr. Schneider refused to testify unless appellee waived his privilege.
 {¶ 60} At trial, appellant contended that any privilege held by either party was waived when both parties raised the issue of custody of the children. When appellant's argument failed at trial, appellant proffered the proposed testimony. In the proffer, appellant indicated that appellee had made admissions of a drinking problem and other related family problems. However, appellant indicated that she did not have the benefit of actually reviewing Mr. Schneider's files. Transcript of proceedings, pg. 565-566.
 {¶ 61} On appeal, appellant concludes that her inability to present Mr. Schneider's testimony impacted appellant's ability to corroborate her allegations concerning appellee's conduct and suitability to be the residential parent.
 {¶ 62} R.C. 2317.02 identifies privileged communications. That statute provides as follows, in pertinent part:
 {¶ 63} "The following persons shall not testify in certain respects:
 {¶ 64} "(G)(1) [A] person licensed under Chapter 4757. of the Revised Code as a professional clinical counselor, professional counselor, social worker, independent social worker, marriage and family therapist or independent marriage and family therapist . . . concerning a confidential communication received from a client in that relation or the person's advice to a client unless any of the following applies:
 {¶ 65} "(a) The communication or advice indicates clear and present danger to the client or other persons. For the purposes of this division, cases in which there are indications of present or past child abuse or neglect by the client constitute a clear and present danger.
 {¶ 66} "(b) The client gives express consent to the testimony.
 {¶ 67} "(c) If the client is deceased, the surviving spouse or the executor or administrator of the estate of the deceased client gives express consent.
 {¶ 68} "(d) The client voluntarily testifies, in which case the . . . person licensed or registered under Chapter 4757. of the Revised Code may be compelled to testify on the same subject.
 {¶ 69} "(e) The court in camera determines that the information communicated by the client is not germane to the counselor-client, marriage and family therapist-client, or social worker-client relationship.
 {¶ 70} "* * * . . .
 {¶ 71} "(g) The testimony is sought in a civil action and concerns court-ordered treatment or services received by a patient as part of a case plan journalized under section 2151.412
of the Revised Code or the court-ordered treatment or services are necessary or relevant to dependency, neglect, or abuse or temporary or permanent custody proceedings under Chapter 2151 of the Revised Code." R.C. 2317.02(G).
 {¶ 72} Upon review, we find that the trial court did not abuse its discretion in holding that Mr. Schneider's proposed testimony was privileged. Nothing in the proffer nor appellant's argument before the trial court indicated that any of the exceptions under R.C. 2317.02(G) applied in this case. Further, we reject appellant's assertion that appellee's privilege was waived simply because appellee sought custody of the children. See, generally, In re Wieland, 89 Ohio St.3d 535,2000-Ohio-233, 733 N.E.2d 1127.
 {¶ 73} Appellant's fourth assignment of error is overruled.
 V {¶ 74} In the fifth assignment of error, appellant asserts that the trial court erred and abused its discretion when it failed to grant appellant any form of companionship with her minor children. Appellant acknowledges that she was convicted of eight counts of endangering children but asserts that the offenses were less heinous than one might think and that the convictions failed to justify the total loss of contact with the children.
 {¶ 75} A trial court's decision concerning visitation rights will not be reversed on appeal except upon a finding of an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142, 144,541 N.E.2d 1028. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140, 1142.
 {¶ 76} A trial court contemplates the best interests of the child when it determines visitation rights. In re Whaley (1993),86 Ohio App.3d 304, 317, 620 N.E.2d 954. However, a non-custodial parent's right to parenting time or visitation is to be denied only under extraordinary circumstances, such as the unfitness of the non-custodial parent, or a showing that such contact would cause physical/emotional harm to the children. Pettry v. Pettry
(1984), 20 Ohio App.3d 350, 486 N.E.2d 213, paragraph one of the syllabus.
 {¶ 77} A review of the evidence before the trial court demonstrates that the trial court did not abuse its discretion. Appellant was convicted of eight counts of endangering children based upon her treatment of her own children, as well as other children in the home. As terms of her probation, appellant was precluded from any contact with any children, absent special written permission.
 {¶ 78} The Magistrate reviewed videotapes from the child endangering proceedings which had secretly recorded appellant's treatment of the children. The Magistrate found multiple incidents of violence and mistreatment of the children in appellant's care, including striking the children and cutting appellant's daughter (from a previous relationship) with a knife during an argument.
 {¶ 79} The children's counselor, Dale A. Wenke, testified that the children suffered from post-traumatic stress syndrome from years of abuse by appellant. Transcript of proceedings, pgs. 12-17. The minor children remained in counseling at the time of trial. Although the daughter was making some progress, the son's progress was much slower.
 {¶ 80} Wenke further opined that until appellant admitted that there was a problem there was little hope of rehabilitation. Appellant's probation officer confirmed that appellant never took responsibility for her actions.
 {¶ 81} Upon review, we cannot say that the trial court abused its discretion when it concluded that the children's best interests would not be served by forcing the children to have contact with appellant.
 {¶ 82} Accordingly, appellant's fifth assignment of error is overruled.
 VI {¶ 83} In the sixth and final assignment of error, appellant submits that the trial court erred and abused its discretion when it made an award of $5,500.00 in attorney fees against appellant and in favor of appellee. We disagree.
 {¶ 84} An award of attorney fees is within the sound discretion of the trial court. Swanson v. Swanson (1976),48 Ohio App.2d 85, 355 N.E.2d 894. Thus, an award of attorney fees will not be disturbed absent an abuse of that discretion. Id. To constitute an abuse of discretion, the decision must be unreasonable, arbitrary or unconscionable. Blakemore, supra.
 {¶ 85} Appellant points out that appellee earned $25,600 per year while appellant earned $14,500.00 with a minimum wage-type job earning $7.00 per hour. Appellant further points out that the trial court withheld a portion of appellant's equity for a period of 6 years, ordered that she pay child support, awarded a judgment of $2,651.88 and then awarded attorney fees in an amount that is disproportionate to her means.
 {¶ 86} In this case, the Magistrate found appellee had incurred attorney fees of $6,626.27. The Magistrate recommended that appellee be awarded the sum of $500.00 arising from the Magistrate's recommending that appellant be found in contempt (in regard to the 1997 Chevrolet Lumina). Otherwise, however, the Magistrate recommended that each party pay his or her respective legal fees.
 {¶ 87} Appellee objected to the Magistrate's Decision, arguing that the award of attorney fees was too low. Appellee contended that he should have been awarded his total attorney fees of $11,926.00 because of appellant's criminal wrongdoing, and appellant's protracted litigation seeking to be designated the residential parent of the children she abused. Appellee argued that instead of facing up to her own actions, appellant attempted to direct the trial court's attention by manipulating the system and making false allegations against appellee.
 {¶ 88} The trial court agreed with appellee's objection and awarded appellee an additional $5,000.00 toward his attorney fees based upon the protracted litigation by the appellant to gain residential parent status.
 {¶ 89} It is well settled in Ohio that in order for a court to order one party to pay another's attorney fees, the shifting of fees must be authorized by statute or must be based on the court's determination that the party ordered to pay fees acted "in bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons." See Vance v. Roedersheimer (1995),64 Ohio St.3d 552, 597 N.E.2d 153; see, also, International Lottery,Inc. v. Kerouac (1995), 102 Ohio App.3d 660, 657 N.E.2d 820
(citing Sorin v. Bd. Of Educ. of Warrensville Hts. School Dist.
(1976), 46 Ohio St.2d 177, 347 N.E.2d 527). In this case, it appears that the trial court ordered appellant to pay attorney fees as a result of finding that appellant's behavior was in essence in bad faith, vexatious, wanton, obdurate, or for oppressive reasons.
 {¶ 90} Upon review, we find no abuse of discretion
 {¶ 91} Appellant's sixth and final assignment of error is overruled.
 {¶ 92} The judgment of the Licking County Court of Common Pleas is affirmed, in part, and reversed, in part. The matter is remanded for further proceedings consistent with this opinion.
Edwards, J., Gwin, P.J. and Boggins, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas, Domestic Relations Division, is affirmed, in part, and reversed, in part. This matter is remanded for further proceedings. Costs to be paid 90 percent by appellant and 10 percent by appellee.
[1] The trial court specifically found that the appellee is not the biological father of that child.
[2] {¶ a} Revised Code 3105.171 states as follows:
{¶ b} "(A) As used in this section:
{¶ c} "* * *
{¶ d} "(6)(a) "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
{¶ e} "(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
{¶ f} "(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;
1. . . .
{¶ g} "(b) The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separateproperty is not traceable. R.C. 3105.171.
[3] The trial court made corresponding orders in the final divorce decree.
[4] "A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court." R.C. 3105.171(I).
[5] The final divorce hearing was conducted on November 6, 7 and 8 and December 19, 2001. Appellant did not file a motion for the evaluations until November 13, 2001.