OPINION
{¶ 1} Defendant-appellant Deirdre I. Weaver appeals from the April 15, 2005, Judgment Entry and Opinion of the Licking County Court of Common Pleas, Domestic Relations Division.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 20, 2000, appellee Charles V. Weaver, Jr. filed a complaint for divorce against appellant. A contested divorce hearing was held before a Magistrate on November 6, 7, and 8, as well as December 19, 2001. The following facts arose from that hearing.
 {¶ 3} The parties were married on June 6, 1987, and have two minor children, to-wit: Michelle (d.o.b. 9/7/89) and Charles, III (d.o.b. 3/3/91). At the time of the proceeding, appellant had custody of another child from a previous relationship and appellee was the non-residential parent of a child from a previous relationship.
 {¶ 4} Prior to the parties' marriage, appellee owned real estate that was located on Chestnut Hills Road in Licking County, Ohio. During the parties' marriage, this real estate was used as collateral to purchase a building lot on O'Possum Hollow Road, also in Licking County, Ohio. In 1992, the Chestnut Hills Road property was sold for $59,900.00. From the net proceeds of the sale, appellee purchased materials for the construction of the residence on O'Possum Hollow Road which was competed in 1996. At the time of the proceeding, the parties lived in the O'Possum Hollow Road residence.
 {¶ 5} On February 8, 2000, appellant was arrested on nine counts of child endangerment and removed from the marital residence. Appellant was subsequently convicted of all nine counts in the Licking County Common Pleas Court. Upon appeal, The Fifth District Court of Appeals affirmed eight of the convictions. As part of her sentence, appellant was ordered to have no contact with any child absent written permission from appellant's Probation Officer.
 {¶ 6} Upon completion of the hearings, the Magistrate issued a Magistrate's Decision. Both parties filed timely objections to the Magistrate's Decision. Those objections were resolved in the trial court's Opinion filed August 1, 2003. A Judgment Decree of Divorce was filed on October 3, 2003.
 {¶ 7} Appellant timely appealed from the Judgment Decree of Divorce. Appellant, in her appeal, argued, in part, that the trial court erred in holding that a portion of the Chestnut Hills real estate was the non-marital, separate property of appellee and in holding that half of the net proceeds from the sale of the Chestnut Hills property, or $16,485.00, was non-marital. Appellant also argued that the trial court erred when it awarded appellee $2,651.88 as and for child support relative to his step-daughter.
 {¶ 8} Pursuant to an Opinion filed on August 9, 2004, inWeaver v. Weaver, Licking App. No. 2003CA00096, 2004-Ohio-4212, this Court held, with respect to the real estate, in relevant part, as follows: "While we agree with the trial court that it is clear that some portion of the Chestnut Hills property was appellee's separate property, appellee bears the burden of proof to trace the assets to separate property. Because appellee failed to meet this burden, as even recognized by the trial court, the trial court erred when it designated a portion of the net proceeds from the sale of the Chestnut Hills property as separate property. Thus, the decision to characterize the property as separate property was not supported by sufficient, credible evidence. The trial court should have characterized the property . . . as marital property in total." Id. at paragraph 27.
 {¶ 9} This Court, in our Opinion, further found that the trial court had erred in awarding appellee $2,651.88 as child support relative to his step-daughter since appellee had not made a timely motion for such support. This Court noted that appellant had a valid and enforceable order to receive child support and that appellant was legally entitled to receive those payments. The judgment of the trial court was, therefore, reversed in part and the matter remanded for further proceedings with respect to the issues of the division of marital property and support relative to appellee's step-daughter
 {¶ 10} Thereafter, pursuant to a Judgment Entry and Opinion filed on April 15, 2005, the trial court, on remand, awarded appellee 60% and appellant 40% of the equity in the marital residence. The trial court further found that the reasonable value of the necessaries provided by appellee to his step-daughter was $5,300.00.
 {¶ 11} Appellant now raises the following assignments of error on appeal:
 {¶ 12} "UPON REMAND BY THE COURT OF APPEALS ON AUGUST 9, 2004, THE TRIAL COURT FAILED TO MAKE A PROPER DIVISION OF THE PARTIES' MARITAL PROPERTY PURSUANT TO R.C. 3105.171 AND THAT SUCH FAILURE CONSTITUTES AN ABUSE OF DISCRETION.
 {¶ 13} "UPON REMAND BY THE COURT OF APPEALS ON AUGUST 9, 2004, THE TRIAL COURT AWARDED PLAINTIFF-APPELLEE A JUDGMENT FOR NECESSITIES RELATIVE TO HIS STEP-DAUGHTER IN THE AMOUNT OF $5,300.00 WITHOUT EVIDENCE OR A CHILD SUPPORT WORKSHEET AND SUCH FINDING CONSTITUTES AN ABUSE OF DISCRETION."
 I {¶ 14} Appellant, in her first assignment of error, argues that the trial court, upon remand, failed to make a proper division of the parties' marital property.[1] We agree.
 {¶ 15} As is stated above, the trial court, on remand, awarded appellee 60% and appellant 40% of the equity in the marital residence. In the original appeal in this matter, appellee had argued that it would not be equitable to divide the property equally between appellant and appellee because the trial court could trace appellee's separate property into the O'Possum Road property. Neither party argued that the equity in the O'Possum Road property which was in excess of the amount appellee claimed as his separate property, should be divided other than 50-50. As is stated above, this Court, in our Opinion, August 9, 2004, held that the trial court's decision to characterize a portion of the O'Possum Road property as appellee's separate property was not supported by sufficient, credible evidence since appellee failed to meet the burden of proof of tracing his assets to separate property. This court further held that the trial court should have characterized the property as marital property in total. Implicit in such holding is that the property should have been divided equally between the parties. This was implicit because the trial court in the original decree had granted 50% of the equity in the O'Possum Road property that it had determined to be marital property to each party. This division of marital equity was not challenged in the original appeal.
 {¶ 16} Moreover, as a general rule, the law requires that marital property be divided equally. See R.C. 3105.171(C)(1). If, however, an equal division would produce an inequitable result, the property of the parties must be divided in such a way as the domestic relations court determines to be equitable. R.C.3105.171(C), Baker v. Baker (1992), 83 Ohio App.3d 700, 702,615 N.E.2d 699.
 {¶ 17} In making a division of marital property or a distributive award, the trial court is required to consider all nine factors listed in R.C. 3105.171(F).
 {¶ 18} R.C. 3105.171(F) states as follows:
 {¶ 19} "In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
 {¶ 20} "(1) The duration of the marriage;
 {¶ 21} "(2) The assets and liabilities of the spouses;
 {¶ 22} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 {¶ 23} "(4) The liquidity of the property to be distributed;
 {¶ 24} "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 {¶ 25} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 {¶ 26} "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 {¶ 27} "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 {¶ 28} "(9) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 29} While R.C. 3105.171(F)(9) allows a trial court to consider relevant factors even though not specifically listed in 3105.171(F), we agree with the appellant that the ability of the trial court to consider other factors is not unfettered. Relevant factors are generally those that can be quantified in monetary terms. They are not generally punitive in nature except as related to the financial misconduct of a party. R.C.3105.171(C)(2) states that "[e]ach spouse shall be considered to have contributed equally to the production and acquisition of marital property." This wording indicates that marital property is presumed to be acquired by equal efforts of each party. The interest of each party is, therefore, vested to some extent in the marital property and the interest of each party can not be diminished as a punishment to that party for bad behavior. Generally, the only exception to that statement is if that bad behavior can be considered financial misconduct and can be quantified.The trial court did not find that appellant had committed financial misconduct.
 {¶ 30} The trial court, in the case sub judice, stated, in relevant part, as follows in its April 15, 2005 Judgment Entry and Opinion:
 {¶ 31} "a. The plaintiff was forced to incur legal expenses, obtain a civil protection order against defendant (which was later dismissed after the divorce action was filed). The civil protection order included protection of the defendant's daughter by a prior marriage.
 {¶ 32} "b. The plaintiff incurred legal expenses to restrain defendant from incurring indebtedness for which he would be liable.
 {¶ 33} "c. Due to the criminal charges against defendant, the plaintiff was forced to incur expenses to provide necessaries for the defendant's child by a prior marriage.
 {¶ 34} "d. During the marriage, the defendant incurred over $20,000 in credit card debt.
 {¶ 35} "e. The plaintiff was forced to refinance the loan on the 1997 Chevrolet Lumina.
 {¶ 36} "f. The plaintiff was forced to incur additional legal expenses to retrieve possession of the car from defendant which had been temporarily awarded to him during the pendency of the divorce.
 {¶ 37} "g. The defendant was found to cause plaintiff harm by alleging he had an inappropriate relationship with her daughter by a prior marriage.
 {¶ 38} "h. Due to defendant's activities, the plaintiff was forced to expend funds to buy a video camera and equipment which confirmed she abused the children in her home.
 {¶ 39} "i. The defendant by her criminal actions has caused the plaintiff to incur counseling expenses for the children.
 {¶ 40} "j. The defendant harassed plaintiff during the pendency of the divorce action by filing a complaint against him with US Postal Service.
 {¶ 41} "k. The defendant failed or refused to assist in providing necessaries for her daughter but did have sufficient funds to buy "vanity" license plates for the car.
 {¶ 42} "l. The plaintiff continued to pay exclusively the mortgages, taxes, and insurance on the marital residence over the prolonged divorce case.
 {¶ 43} "m. Shortly after their initial separation and while the divorce action was pending defendant became pregnant by another man.
 {¶ 44} "n. Plaintiff received medical bills for defendant's treatment for this pregnancy."
 {¶ 45} The trial court did not assign a monetary value to all of the items represented in an, which are cited above. In order to divide the marital property unequally, the trial court was required to justify how an unequal division could be considered equitable. See R.C. 3105.171(C)(1) and Kaechle v. Kaechele
(1988), 35 Ohio St.3d 93, 518 N.E.2d 1197.
 {¶ 46} While we understand the trial court's outrage at the activities of the appellant and its desire to compensate the appellee for what he has endured, we find that the reasons given by the trial court for the unequal division of the real property are not sufficient under the law to justify that division.
 {¶ 47} Appellant's first assignment of error is, therefore, sustained.
 II {¶ 48} Appellant, in her second assignment of error, argues that the trial court, upon remand, awarded appellee a judgment for necessities relative to his step-daughter in the amount of $5,300.00 without evidence or a child support worksheet. We agree.
 {¶ 49} R.C. 3103.03(D) states as follows: "If a parent neglects to support the parent's minor child in accordance with this section and if the minor child in question is unemancipated, any other person, in good faith, may supply the minor child with necessaries for the support of the minor child and recover the reasonable value of the necessaries supplied from the parent who neglected to support the minor child."
 {¶ 50} As is stated above, the trial court awarded appellee $2,651.88 as and for child support relative to his step-daughter. Appellant then appealed. This Court, in our August 9, 2004, Opinion, found that the trial court had erred in awarding appellee $2,651.88 as child support relative to his step-daughter since appellee had not made a timely motion for such support. Although this Court, in our August 9, 2004, Opinion, indicated that appellee had not filed a motion for support, appellee had filed a motion captioned "Motion for Necessaries" on October 30, 2001. Appellee, in his motion, stated, in relevant part, as follows:
 {¶ 51} "On February 8, 2000, Defendant was arrested and removed from the marital residence. Brittany Turnbill, Plaintiff's step-daughter, remained in Plaintiff's care until December 1, 2000. During that time frame, Plaintiff was the sole provider for the minor child. Defendant continued to receive child support checks from Brittany Turnbill's father, Kevin Turnbill, during this time frame. Defendant did not provide any financial support for her daughter during this time.
 {¶ 52} "Therefore, Plaintiff would respectfully request that he be reimbursed the amount of child support paid by Kevin Turnbill to Defendant during this time frame."
 {¶ 53} On remand, the trial court, specifically found that "the reasonable value of the necessaries provided by the plaintiff to be $5,300.00 from February 8, 2000, to December 1, 2000." It is unclear from the record how the trial court arrived at such figure. While, from the transcript of the trial, it is clear that appellee provided all of his step-daughter's food, clothes and utilities, it is unclear how the $5,300.00 figure was arrived at.
 {¶ 54} Based on the foregoing, this matter is remanded to the trial court for a hearing to determine the actual amount of the necessaries.
 {¶ 55} Accordingly, the judgment of the Licking County Court of Common Pleas, Domestic Relations Division is reversed and remanded with respect to the amount of necessaries. With respect to the marital residence, pursuant to App. R. 12(B), we hereby enter the judgment the court should have entered, and award both appellant and appellee 50% of the equity in marital residence. Nothing in this court's opinion is meant to modify any other orders of the trial court other than those orders challenged in this appeal.
Edwards, J. Farmer, P.J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking Court of Common Pleas is reversed in part and remanded in part. With respect to the marital residence, we hereby award both appellant and appellee 50% of the equity in the marital residence. Costs assessed to appellee.
[1] We want to acknowledge the typographical error in paragraph 27 of our August 9, 2004, decision. $132,970.00 should have been $32,970.00 which were the proceeds from the Chestnut Hill property.